UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-62176-CIV-DIMITROULEAS/SNOW

GARLAND RUSSELL,

    Plaintiff,

vs.

KILOLO KIJAKAZI, ACTING
COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

    Defendant.
_____/

REPORT AND RECOMMENDATION

    This cause is before the Court on Plaintiff's Complaint seeking judicial review of a final decision of the Social Security Administration denying the Plaintiff's application for disability benefits. The Complaint was filed pursuant to the Social Security Act, 42 U.S.C. § 401, et seq., and was referred to United States Magistrate Judge Lurana S. Snow for a Report and Recommendation.

I. PROCEDURAL HISTORY

    The Plaintiff filed an application for disability benefits on October 23, 2018, alleging disability since October 22, 2018 as a result of mental impairments. The application was denied initially and upon reconsideration. The Plaintiff then requested a hearing, which was held before Administrative Law Judge Sylvia H. Alonso on December 20, 2019. On January 23, 2020, the Administrative Law Judge (ALJ) found that the Plaintiff was not disabled within the meaning of the Social Security Act. The Appeals Council denied the Plaintiff's request for review on September 2, 2020. The Plaintiff then filed this action seeking judicial review of the decision of the Commissioner.

## II. FACTS

The Plaintiff was born on January 23, 1955, and has a master's degree in public health. His past relevant work was as an investigator and vice president, and involved verifying the credentials of medical professionals for insurance companies. He resigned his position in August 2018 because he found the job was too stressful for him to handle, but continued to work for the same employer on a contract basis. (R:37-46)

The medical record reflects that the Plaintiff began treatment with Mark Ehrenshaft, LCSW on October 2, 2017, and continued at least until October 7, 2019. (R:285-330, 409-424) The Plaintiff consistently complained of depression, anxiety, insomnia and hallucinations (visual and audio) of his deceased domestic partner, who died in 2016, and hearing voices of people who had abused him as a child. On February 15, 2018, Mr. Ehrenshaft's notes specify for the first time his consistent diagnoses of Major Depressive Disorder, Generalized Anxiety Disorder, Panic Disorder and Post-Traumatic Stress Disorder (PTSD). (R:299) From that date forward[1], Mr. Ehrenshaft's records reflect identical findings on mental status examination, indicating that the Plaintiff was oriented in all spheres, with anxious and depressed mood, appropriate affect, well-groomed appearance, normal speech, appropriate activity level, cooperative attitude, normal thoughts, no suicidal or homicidal ideation and appropriate insight and judgment. The Plaintiff consistently was fully engaged and his progress met expectations. On September 27, 2018, the Plaintiff told Mr. Ehrenshaft that an MRI and neurological testing had revealed no neurological causes for his symptoms. (R:299-330, 409-424)

---

[1] Prior to that date, mental status exams showed "depressed," rather than "depressed and anxious" mood, but other findings were the same. (R:294-98)

During approximately the same time period (February 9, 2018 to November 13, 2019), the Plaintiff was treated by Richard S. Faulk, M.D., a psychiatrist, for medication management. (R:265-84, 331-355, 378-408, 425-29). The Plaintiff reported the same symptoms as he had related to Mr. Ehrenshaft, and on Feburary 9, 2018, Dr. Faulk diagnosed Major Depression, Generalized Anxiety Disorder (GAD),Panic Disorder, PTSD and Insomnia. (R:284)  Throughout the treatment period, Dr. Faulk's findings on mental status examination were the same: normal speech and language; appropriate affect; depressed and/or anxious/irritable mood; normal thought processes and associations; presence of hallucinations; no delusions; no suicidal or homicidal ideation, and normal attention span, concentration, insight/judgment, general appearance and gait/station.[2] (R: 265-270, 272-77, 280, 331-32, 334, 336-41, 343-48, 351, 378-80, 382,  384-85, 387, 389-90, 391-94, 396-401, 403-04)

On February 4, 2019, Candace Mihm, Ph.D., a state agency non-examining psychologist, completed a Psychiatric Review Technique Form relating to the Plaintiff.  Dr. Mihm determined that the Plaintiff suffered from severe depressive, anxiety and trauma/stressor-related disorders, and he had mild limitations in the area of understanding, remembering and applying information; moderate limitations in the area of interacting with others; moderate limitations in the area of concentrating, persisting and maintaining pace and moderate limitations in the area of adapting or managing himself.  (R:75)  The doctor found that the Plaintiff's allegations were generally consistent and noted that he had a history of counseling and psychiatric

---

[2] Dr. Faulk's findings only varied in his characterizations of the Plaintiff's mood, reflecting different combinations of "depressed," "anxious" and "irritable." Additionally, the doctor's first report indicated that the Plaintiff had no hallucinations. (R:280)

medication. She stated that the most recent mental status examination in the Plaintiff's file was benign with the exception of depressed mood, and the Plaintiff was described as stable. His mental activities of daily living were fairly functional and independent. Dr. Mihm concluded that none of the Plaintiff's impairments met a listing. (R:76)

Also on February 4, 2019, Dr. Mihm completed a Mental Residual Functional Capacity Assessment of the Plaintiff. She found that the Plaintiff had no limitations in the area of understanding and memory, stating that the Plaintiff could understand and remember simple and detailed instructions. In the area of sustained concentration and persistence, the Plaintiff had no significant limitations in his abilities to carry out very short and simple instructions; perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; maintain an ordinary routine without special supervision; work in coordination with or in proximity to others without being distracted by them, and make simple work-related decisions. However, the Plaintiff was moderately limited in the abilities to carry out detailed instructions; maintain attention and concentration for extended periods, and complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. She stated that the Plaintiff could complete simple and most detailed tasks and could maintain concentration, persistence and pace with normal supervision, but his mood and anxiety symptoms might occasionally disrupt concentration. (R:78-79)

In the area of social interaction, the Plaintiff was not significantly limited in his abilities to ask simple questions and request assistance; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers

without distracting them or exhibiting behavioral extremes, and maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. He was moderately limited in his ability to interact appropriately with the general public. Dr. Mihm explained that the Plaintiff could relate to co-workers and supervisors adequately in the workplace, but he may perform best in a setting that does not require extensive interaction with the general public owing to mood and anxiety symptoms. (R:79)

In the area of adaptation, the Plaintiff was not significantly limited in the abilities to be aware of normal hazards and take appropriate precautions; travel in unfamiliar places and use public transportation, and set realistic goals and make plans independently of others. He was moderately limited in the ability to respond appropriately to changes in the work setting. She stated that the Plaintiff could avoid ordinary hazards, drive and arrange transportation, adapt to simple routine changes and set goals and plans. Dr. Mihm concluded that the Plaintiff retained the capacity to perform simple and most detailed (semi-skilled) tasks in a setting that does not require extensive interaction with the general public. Id.

On March 14, 2019, Sally Rowley, Psy.D., another state agency non-examining psychologist, completed a Psychiatric Review Technique Form and Mental Residual Functional Capacity Assessment of the Plaintiff, which affirmed all of the findings of Dr. Mihm. (R:87-92)

At the administrative hearing, the Plaintiff testified that he drove his vehicle 2-3 days per week. He had lived alone for the preceding 3 years, and had moved from Massachusetts to Florida in December 2016. The last time the Plaintiff traveled to Boston was in August 2018. He traveled to North and South Carolina to visit his brother, most recently for the 2019 Thanksgiving holiday. The Plaintiff stated

that he had looked for other credentialing jobs, but had not received any offers. (R:36, 47-49)

The Plaintiff stated that he had great trouble sleeping. He was taking mirtazapine for insomnia, but it did not help significantly. The Plaintiff estimated that he slept for 4-5 hours each night. (R:50)

When questioned about the effects of stress at his job, the Plaintiff testified that he experienced panic attacks, increased depression and anxiety/anger issues, although he usually was able to keep his anger in check. For the last 1 ½ years, the Plaintiff had worked from home. As the result of panic attacks, he would become nauseated and sometimes had trouble just doing his job. The Plaintiff's depression made it difficult to get up, take a shower, go grocery shopping and generally get through the day. The depression also made it difficult for the Plaintiff to concentrate. He stated that often he did not have the energy to do anything. (R:50-52)

Regarding his hallucinations, the Plaintiff testified that he heard voices from his childhood of people saying derogatory things about him. He also continually saw his late partner and had conversations with him. Additionally, the Plaintiff experienced tremors in his dominant right hand, which began in March 2018 when the Plaintiff started taking Seroquel. The tremors made it difficult to write. (R:52-53)

Lisa Goudy, a vocational expert (VE) testified that there were no Dictionary of Occupational Titles (DOT) classifications which exactly matched the Plaintiff's prior jobs. The closest were "investigator" and "vice president," which are classified as light work, but sedentary as performed by the Plaintiff. The VE was asked by the ALJ to consider a hypothetical individual of the same age, education and work experience of the Plaintiff, who was able to perform the full range of exertional demands, and could concentrate and persist to complete simple and detailed tasks,

tolerate frequent interactions with supervisors, coworkers and the public and could adjust to routine changes in the work setting. The VE testified that such a person would be limited to unskilled and perhaps semi-skilled work, and would not be able to perform the Plaintiff's past work, which was skilled. However, the person could perform the jobs of industrial cleaner, hand packager and kitchen helper, each of which was at the medium exertional level and existed in significant numbers in the national economy. (R:55-60)

In response to questions by Plaintiff's counsel, the VE testified that this hypothetical individual could perform each of these jobs even if he could have only occasional interactions with coworkers and supervisors, but could not do any work if he were off-task 15% of the time, had only occasional use of his dominant hand or was absent from work at least once a week. The VE stated that arriving at work late or leaving early for any of these jobs might not be counted as an absence, but likely would be counted as time off-task. The Plaintiff's attorney did not question the VE about limitations in the area of interacting with the general public. (R:61-63)

### III. DECISION OF THE ALJ

The ALJ first found that the Plaintiff met the insured status requirements of the Social Security Act through December 31, 2020; had not engaged in any substantial gainful activity since his alleged onset date of October 22, 2018, and had the severe impairments of depression, anxiety and PTSD. The ALJ found that the Plaintiff's physical impairments were non-severe, and the Plaintiff did not have an impairment which met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. In reaching this conclusion, the ALJ determined that the Plaintiff had mild limitations in the area of understanding, remembering, or applying information; moderate limitations in the

area of interacting with others; moderate limitations in the area of concentrating, persisting or maintaining pace, and moderate limitations in the area of adapting and managing himself. (R:17-20)

The ALJ assessed that the Plaintiff retained the residual functional capacity to perform a full range of work at all exertional levels, with the limitations that he could concentrate and persist to complete simple and detailed tasks; could tolerate frequent interaction with supervisors, coworkers and the public, and could adjust to routine changes in the work setting. After summarizing the Plaintiff's hearing testimony (R:21), the ALJ found that although the Plaintiff's medically determinable impairments reasonably could be expected to cause the alleged symptoms, the Plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. The ALJ stated that although the medical evidence established that the Plaintiff suffered from severe impairments, those impairments had not resulted in debilitating limitations in functioning. The ALJ noted that examination results had been within essentially normal limits. Additionally, the record established that the Plaintiff lived alone, was independent in activities of daily living, and traveled extensively during the relevant period, including trips to Boston, North Carolina and South Carolina. Id.

In her summary of the medical record, the ALJ noted that mental status examinations essentially were unremarkable. She pointed out that the Plaintiff felt better after driving his Audi TT; continued to work as a contractor for his former employer after resigning from his job; interviewed for other jobs, and traveled to South Carolina. The record revealed that an MRI of the Plaintiff's brain and a nerve conduction study of his right upper extremity showed no abnormalities. The ALJ

stated that the opinions of the state agency medical consultants were persuasive, noting that they were experts in the evaluation of medical issues in disability claims and in evaluating the restrictions and limitations caused by the Plaintiff's symptoms. (R:22)

The ALJ concluded, based on the VE's testimony, that the Plaintiff was unable to perform any of his past relevant work, but could perform the jobs of industrial cleaner, hand packager and kitchen helper, each of which exists in significant numbers in the national economy. Accordingly, the Plaintiff was not disabled for purposes of the Social Security Act. (R:23-24)

## IV. CROSS MOTIONS FOR SUMMARY JUDGMENT

The Plaintiff seeks reversal or remand on the grounds that the ALJ erred by failing to properly evaluate the Plaintiff's testimony; failing to give proper weight to limitations articulated by the state agency psychologists, and failing to consider the Plaintiff's age at Step 5 of the Sequential Evaluation Process.

The Commissioner contends that the decision of the ALJ must be affirmed because it is supported by substantial evidence and the correct legal standards were applied.

## V. RECOMMENDATIONS OF LAW

At issue before the Court is whether the final decision of the Commissioner, as reflected by the record, is supported by substantial evidence. "Even if the evidence preponderates against the Secretary, we must affirm if the decision is supported by substantial evidence." Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1985). Substantial evidence is defined as such relevant evidence as a reasonable mind would accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389 (1971); Bloodsworth v. Heckler, 703 F.2d 1233 (11th Cir. 1983). The Court must

review the record as a whole to determine if the decision is supported by substantial evidence. Bloodsworth, 703 F.2d at 1239. The Court must also determine whether the Administrative Law Judge applied the proper legal standards. No presumption of validity attaches to the Commissioner's determination of the proper legal standards to be applied. Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993) (citing Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987)).

In making a disability determination, the ALJ must perform the sequential evaluation outlined in 20 C.F.R. § 404.1520. First the claimant must not be engaged in substantial gainful activity after the date the disability began. Second, the claimant must provide evidence of a severe impairment. Third, the claimant must show that the impairment meets or equals an impairment in Appendix 1 of the Regulations. If the claimant fails to provide sufficient evidence to accomplish step three, the analysis proceeds to step four. In step four, the ALJ must determine the claimant's residual functional capacity, then determine if the claimant can perform his or her past relevant work. The claimant has the burden of proving the inability to perform past relevant work. If the claimant's evidence shows an inability to perform past relevant work, the burden shifts to the ALJ in step five. The ALJ must show that there is other gainful work in the national economy which the claimant can perform. Once the ALJ identifies such work, the burden returns to the claimant to prove his or her inability to perform such work.

### A. Evaluation of the Plaintiff's Testimony

The Plaintiff first contends that the ALJ failed to properly credit his testimony regarding the limiting effects of his symptoms. The applicable standard for evaluating subjective testimony is set forth in court decisions relating to allegations of pain. The ALJ must consider a claimant's subjective testimony regarding pain or

other subjective symptoms if she finds evidence of an underlying medical condition, and either (1) objective medical evidence to confirm the severity of the alleged pain (or other symptoms) arising from that condition, or (2) that the objectively determined medical condition is of a severity that can reasonably be expected to give rise to the alleged pain (or symptoms). Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992); Mason v. Bowen, 791 F.2d 1460, 1462 (11th Cir. 1986); Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986). However, the ALJ may reject a claimant's testimony regarding pain (or symptoms) as not credible, and that determination must be upheld if it is supported by substantial evidence. Wilson v. Heckler, 734 F.2d 513, 517 (11th Cir. 1984).

In the instant case, the ALJ noted that examination results had been within essentially normal limits. Additionally, the record established that the Plaintiff lived alone, was independent in activities of daily living, and traveled extensively during the relevant period, including trips to Boston, North Carolina and South Carolina. The Plaintiff argues that the ALJ did not specify any particular portion of the examinations on which she relied, and pointed out that all of the medical records mentioned the Plaintiff's depressed and anxious mood and his hallucinations. However, in explaining her reasons for failing to fully credit the Plaintiff's subjective testimony, the ALJ referenced the Plaintiff's initial psychiatric examination on February 9, 2017, stating:

> Despite concerns with depressed and anxious mood noted on the mental status examination, the claimant was fully oriented with normal general appearance and speech. In addition, his thought processes were normal, attention span and concentration was normal, and insight and judgment was normal. The claimant denied any suicidal/homicidal ideation and there were no delusions noted. He admitted he drove an Audi TT and would feel better after driving.

(R:22)

The ALJ went on to point out similar findings contained in mental status examinations by Dr. Faulk on November 23, 2019 and by Mr. Ehrenshaft on January 21 and October 7, 2019. Id. As noted previously, the mental status findings pertaining to the Plaintiff by Dr. Faulk and Mr. Ehrenshaft remained essentially unchanged throughout their respective periods of treatment. Accordingly, the undersigned finds that the ALJ's reliance on mental status examination results was sufficiently specific.

The Plaintiff also argues that the ALJ incorrectly relied on the Plaintiff's ability to travel and function at home as evidence that his limitations were not as severe as alleged. The Plaintiff relies on Simon v. Comm'r of Soc. Sec. Adm., 1 F.4th 908, 921-22 (11th Cir. 2021) for the proposition that the demands of the workplace are very different from those in the more relaxed settings of home or a medical office, and the ability to perform basic activities of daily living does not equate to the ability to handle the stresses of the workplace. However, Simon involved the trial court's rejection of the opinions of treating and consulting physicians, and the court declined to address the credibility of the plaintiff's testimony. Id. at 923.

Here the ALJ was entitled to consider the Plaintiff's ability to live alone, drive his car, go the gym, work as a contractor, apply for jobs and travel by plane to visit his brother as evidence that his depression and anxiety were not as debilitating as the Plaintiff had suggested in his testimony. When considering that evidence in conjunction with the mental status findings of the Plaintiff's psychiatrist and mental health counselor, substantial evidence supports the ALJ's finding that the Plaintiff's testimony was not fully consistent with the medical record.

## B. Opinions of State Agency Consultants

The Plaintiff next argues that the ALJ erred by failing to incorporate into the hypothetical presented to the VE the assessment of Dr. Mihm and Dr. Rowley that

the Plaintiff may perform best in a setting that does not require extensive interaction with the general public, although the ALJ did limit the Plaintiff to frequent interaction with supervisors, coworker and the public. The Plaintiff points out that SSR 83-10 defines "frequent" as occurring from one-third to two-thirds of the time.

For claims filed after March 27, 2017, 20 C.F.R. § 1520c(a) provides that no deference or specific evidentiary weight, including controlling weight, is to be given to any medical opinion or prior administrative finding, including those of a treating source. Instead, each opinion or prior finding is evaluated by considering the factors set forth in § 1520c(c): (1) supportability; (2) consistency; (3) relationship with the claimant, including length of treatment relationship, frequency of examinations, purpose of treatment relationship and examining relationship; (4) specialization, and (5) other factors, such as familiarity with the other evidence in the claim or an understanding of the program's policies and evidentiary requirements. Of these factors, the most important are supportability and consistency.

Here, the ALJ found the opinions of the non-examining physicians to be persuasive, noting that the doctors were experts in the evaluation of medical issues in disability claims and in evaluating the restrictions and limitations caused by the Plaintiff's symptoms. The undersigned notes that the opinions of the state agency consultants were the only medical opinions in the record dealing with the Plaintiff's mental impairments. The undersigned finds that the ALJ's limitation of the Plaintiff to frequent interaction with the public is fully consistent with the assessments of Dr. Mihm and Dr. Rowley that the Plaintiff <u>may</u> perform best in a setting that does not require <u>extensive</u> interaction with the general public.

Moreover, counsel for the Plaintiff elicited testimony from the VE that an individual who could have only occasional contact with coworkers and supervisors still

would be able to perform the three jobs the VE identified. Counsel did not ask about contact with the general public, and cannot rely on the absence of expert testimony on this point to support his argument. Therefore, the undersigned concludes that the ALJ properly evaluated the testimony of the state agency consultants and correctly included their findings in her residual functional capacity assessment of the Plaintiff.

### C. Step Five of Sequential Evaluation

The Plaintiff's final asserted ground for relief is that the ALJ erred at Step Five of the sequential evaluation process by failing to consider the Plaintiff's limited ability to adjust to new work as the result of his age. The Plaintiff was 63 years old at the time of his alleged disability onset date. In her opinion, the ALJ stated:

> In determining whether a successful adjustment to other work can be made, the undersigned must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2. . . . When the claimant . . . has nonexertional limitations, the medical-vocational rules are used as a framework for decisionmaking. . . .

(R:23) The ALJ went on to state that the hypothetical presented to the VE specified an individual with the Plaintiff's age, education, work experience and residual functional capacity. (R:24) Finally, the ALJ stated, "Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." Id.

Thus, the VE and the ALJ explicitly took into account the Plaintiff's age when specifying the jobs as to which the Plaintiff could make a successful adjustment. While the Plaintiff has sought, and likely would prefer continuing to seek jobs in his

field, there is nothing in the record to suggest that he could not make an adjustment to other work by virtue of his age.  Accordingly, the undersigned concludes that the ALJ did not err at Step Five by failing to consider the Plaintiff's age, and the Plaintiff has failed to show any legal basis to reverse the ALJ's decision or remand the case for further proceedings.

## VI. CONCLUSION

This Court having considered carefully the pleadings, arguments of counsel, and the applicable case law, it is hereby

RECOMMENDED that the Plaintiff's Motion for Summary Judgment (ECF No. 17) be DENIED and the Commissioner's Motion for Summary Judgment (ECF No. 20) be GRANTED.

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable William P. Dimitrouleas, United States District Judge. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covsered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained therein, except upon grounds of plain error if necessary in the interest of justice.  See 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140, 149 (1985); Henley v. Johnson, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.s

DONE AND SUBMITTED at Fort Lauderdale, Florida, this 20th day of September, 2021.

LURANA S. SNOW
UNITED STATES MAGISTRATE JUDGE

Copies to: All counsel of record